19-2061. Mr. Murray for the defense, can you hear me? I can. And Ms. Stewart for the government, can you hear me? Yes, I can, Your Honor. All right, then Mr. Murray, go ahead. Thank you, Your Honor. Good morning, and may it please the court, my name is Ronnie Murray. I represent the appellant, Jeremy Wade. In this case, the district court erred when it omitted any mens rea element from the jury's consideration at Wade's trial for impersonating an officer of the United States under Section 12 of Title 18. As this court found in United States v. the government appropriately conceived that error. But that error was compounded by omission of another element, that being the element of fraudulent intent. District court interpreted the statute, Section 912, as not requiring such intent based on the phrase's absence from the text. And on that basis, the district court rejected Wade's proposed jury instructions, which included both a knowing requirement and an intent to defraud requirement. That was error, because as Wade submits, that statute, Section 912, still requires fraudulent intent, even though those words no longer appear in the text. So counsel, are you asking us to overrule our precedent where we've said that such an element is not part of the statute? I understand other circuits have taken a different approach, but you're not very focused on our precedent. Thank you, Judge. I believe Your Honor is referencing CORD. And the CORD case dealt specifically with whether intent to defraud need be alleged in an indictment. Now to be sure, the CORD case did go farther, and INDICTA said that the removal of that phrase from the statute did remove it as an element. But the specific holding of CORD does not deal with jury instructions. So the court need not overrule CORD in order to find that a jury still need to be instructed on fraudulent intent. Wade is not arguing that even though the Fifth Circuit still requires such intent to be alleged. So for purposes of this, of Wade's position, we are simply arguing that the jury need to be instructed on fraudulent intent, which CORD does not specifically address. So no, this court does not need to overrule its prior precedent, specifically CORD, which would be entirely consistent, like the Eleventh Circuit, with submitting the element to the jury. Like the Eleventh Circuit, they also found, like CORD, like Rosser, that fraudulent intent need not be alleged due to the Lepowich case. And indeed, I think that informs Congress's decision to amend the statute. Lepowich, the Supreme Court case that dealt with a Section 912 indictment, is the only Supreme Court case we have since then that dealt with it. And what Lepowich said is that an indictment, a Section 912 indictment that did not explicitly allege fraudulent intent, may still survive because such intent could be inferred from the other language in the indictment. Lepowich did not say that Section 912 does not require fraudulent intent. It simply said that such intent may be inferred, or alleged by inference, in an indictment. Congress, in response to that, removed that phrase from the statute as meaningless. Congress, nowhere did Congress say that they intended to remove an element, that they intended to expand the scope of the statute, or... Counsel, let me just stop you there. I mean, CORD does say that the code section was changed to eliminate the element of intent to defraud. This change cannot simply be ignored. And other circuits have gone another way, but they certainly describe CORD as holding that, and our approach as being that that element has been omitted. Then respectfully, if that is the specific holding of CORD, I would ask the Court to remove the language that reminds any argument that they intended to dispense with that element. Again, the only rationale we have from Congress is that they removed the language as meaningless. If the language is actually meaningless, its removal does not change the substance of the statute. Moreover, fraudulent intent, the requirement of fraudulent intent, is consistent with criminal jurisprudence generally, which requires criminal intent for someone to be found guilty of crime. The exceptions to that are very limited. Section 912 has never been identified as a strict liability crime by any court, and no court, even this court, has found that Section 912, or the amendment, was intended to expand the scope of the statute, or to, you know, change the substance thereof. So, to the extent CORD does say, although I think the holding is specifically limited to the indictment, to the extent it does, I'm respectfully asking this Court to overrule that and align its position with that of the Eleventh Circuit. Is there any claim here, Mr. Murray, that Mr. Wade was acting on the basis of a mistake, or accident, or misunderstanding of the law? That was not contemplated as part of his defense. Certainly, I think there is a, there would be an argument that Wade certainly didn't, was not aware of the law that he was alleged to have violated when he was committing the acts that substantiated the charges, but that was not, I think, a specific defense that the defense would have argued at trial. What the defense would have argued, and which brings me to my next point, or the next error that I am asking the Court to correct, is that the District Court, based on the jury instructions that were endorsed by the government, and that the District Court ultimately adopted, it ruled that Wade could not discuss any issues relating to either his intent or his romantic motive as part of his defense. The grounds for that were that, listen, the statute doesn't require any mens rea element, so any discussion of Wade's mens rea or lack thereof would amount to jury nullification. This was error, and it violated his right to present a complete defense. So not only did the omission of any mens rea element from the jury instructions lower the government's burden by removing elements that require proof beyond a reasonable doubt, it also handcuffed Wade, because now he could not present any defense that relied on a lack of a requisite mens rea as his theory of innocence. This violated his right to present a complete defense. So the error... Counsel, could you address the government's argument that what you're really trying to do was not challenge mens rea, whether he knew he was not an ATA, sorry, DEA agent, but he was simply trying to offer a motive which would not actually be a defense here? Well, it may not be a perfect defense, but that doesn't make it jury nullification. The argument is that one who is pursuing a romantic interest is less likely to be acting with fraudulent intent, or to be asserting authority, which Wade submits both are required by the statute, both fraudulent intent and an assertion of authority. What the district court's pre-trial ruling did is basically precluded Wade from even mentioning Wade's motive as, again, because it was found to be jury nullification. The argument, again, is that his romantic interest is relevant to whether he had fraudulent intent. It's relevant to whether he was asserting authority. These are all arguments the government could have responded to, but this is not jury nullification. It's an elements-based defense. I'm not asking... How is his motive relevant to whether he was purporting to carry out an investigation of this fictional character in getting the object of his First, I think it's important to note that Ms. Bishop opened her door unprompted by Wade. All he had done at that point was hop out of his vehicle wearing a badge and a holstered gun. He didn't knock on the door. She just opened it before that. At that point, he had done nothing to violate the statute. Excuse me. He had perhaps done the first element, but not the second. The point here is that his romantic interest would have made it less likely that he was intending to defraud Ms. Bishop. Someone who is interested in pursuing someone or impressing her is not intending to cause her some detriment. Fraudulent intent is what separates the criminal from the bragger. Black fraud dictionary defines fraud as a knowing misrepresentation of the truth or a concealment of material fact to induce another to act to his or her detriment. There's a detrimental purpose that's inherent to the statute, and if one is pursuing a romantic... What about... I'm not sure I see that. Either, for example, in Lepowich, where the assumption was that the information about the other person's whereabouts was of no particular interest to the target of the deception, or in Rosser, where trying to get somebody simply to change their behavior is sufficient. Well, by virtue of artifice and deceit, that's what the Lepowich decision relied on. It wasn't just trying to get someone to change their behavior. It was specifically by virtue of artifice. I actually requested those specific instructions. Lepowich didn't render this a strict liability crime. It included deceit or artifice. Why isn't the word falsely in the instructions sufficient under these purposes, especially if there's no point of mistake or accident? Well, because false doesn't necessarily mean a knowing falsehood, and the jury wasn't instructed that false necessarily requires knowingly communicating a falsehood. It might not have said that, but it's subject to a harmless error analysis, and it's difficult for me to see, particularly given your confession to Judge Hamilton, that he didn't try to say he was unaware that he was not a DEA agent, that he didn't knowingly present himself as someone wielding federal authority when he did not. It's impossible. I just don't see how you could satisfy the standard of showing that this error was harmful. Well, because it denied Wade the ability to make arguments that would have influenced the jury's determination, and it precludes the jury from hearing... What arguments are those? How would he have argued that he didn't know that he was lying to her? No, we're not arguing that, and falsely, again, only modifies that first element. Falsely does not compensate for a lack of requiring knowing conduct or fraudulent intent. The argument is not that Wade didn't know he wasn't a DEA agent. The first element we're not disputing is that second element, and we're arguing that there should have been an additional mens rea element that his romantic pursuit would have been relevant to. Had the jury been properly instructed, Wade's romantic interest would have been relevant to his lack of intent to defraud. His intent to defraud is not an element of the statute. That argument falls apart. Well, assuming that intent to defraud, if your court finds that it's not an element of the statute, it's still relevant to whether he was asserting any authority. Nothing Wade asked her to do was by virtue of his pretended authority. He just wanted to get her to go out with him. Okay, but you're right. He was trying to impress her, but I guess I do have to say here, he was trying to trick her into going out with him, doing something she might not otherwise have done, because maybe she felt pressured, because it was an agent wielding a gun who was asking her out. Maybe she was impressed and she wouldn't have otherwise gone out with him. He was nonetheless trying to deceive her into doing something she might not otherwise have done. These would have been excellent issues for the jury to resolve, but they weren't even presented with these issues. Our point is that you're right. This is a very prime issue that the jury should have been presented with, but Wade's inability to discuss how his romantic motive related to the elements required to be proven denied him the right to a fair trial. You're just about into your rebuttal time. Nothing Wade did on either occasion required DEA authority to do. To walk through someone's door, show them a picture, leave a card in the mailbox, none of that required an assertion of DEA authority. He was simply pretending to be a DEA agent or the defense of that. He's pretending to be a DEA agent simply to impress her. Again, it's not for us to determine whether that defense would have resulted in an innocent verdict or not guilty verdict, but it's whether the jury should have been presented with these issues to address and whether the elements, the mens rea element, is something the jury should have decided. I will ask to yield the remainder of my time for rebuttal. Okay. Thank you very much, Mr. Murray. Ms. Stewart for the government. Good morning, Your Honors. May it please the court. Julie Stewart on behalf of the United States. Bonin controls this case and requires affirming it. Bonin presents almost identical issues in a very similar fact pattern. Bonin is also explicit that Section 912 does not require either proof of an intent to defraud nor proof of assertion of authority, even though the instructions, Bonin is clear that the statute does not require an assertion of authority. Without those two elements, there is no basis on which the defendant's romantic motive in this case would have been relevant in any way other than to improperly sway and influence the jury to conclude to nullify the statute by concluding that what Mr. Wade did here was not that serious or that other reason that motive or his romantic interest in the victim in this case was relevant. And the defendant's argument is entirely based on the conflation of the concept of mens rea and motive. Section 912 requires only that a person falsely assumes or falsely pretend to be an officer of the United States. That falsity must, of course, be knowing. That's what the words falsely assume means. That means that the person cannot be operating under an accident or mistake of fact when pretending. Counsel, do you have, what would you say to the defendant's Halloween hypothetical? Would this statute make someone criminally liable for dressing up as a DEA agent at a Halloween party and wielding a badge at the bar to get a drink? No, Your Honor. Well, wielding a badge at a bar to get a drink for free, perhaps, and that might actually fall under the second portion of 912. But the Halloween hypothetical or the adult entertainer hypothetical is not criminalized by this statute because while someone who appears at a Halloween party might be falsely pretending to be a DEA agent, they are not satisfying the second element where they are acting as such. Walking into a Halloween party where everyone is dressed up and being dressed up as a DEA agent is not satisfying the act as such or acting in conformity with the precepts. That's why I included in my hypothetical, maybe I wasn't clear, that at the Halloween party he goes up to the bar to get a drink and he wields his badge because he's in character. He's a DEA agent at the party. So has he acted as such? I see, Your Honor. I apologize. I thought there and showing it to get a drink would not satisfy the act as such element because it's a Halloween party. Context matters. They are falsely, that person is falsely pretending to be a DEA agent, but they are not acting in the way that DEA agents do. They are not trying to convince other people that they actually are a DEA agent. And so in this case, we have something different. Mr. Wade showed up with a badge and a gun and he pretended to investigate somebody for a drug offense. He went to someone's door. He asked questions. He showed a mugshot. These are things that DEA agents do. And that's why we had, the government presented the testimony of a DEA group supervisor to testify that all of the things that DEA agents do. You could not present similar testimony for the Halloween hypothetical or the adult entertainer hypothetical. You couldn't have a DEA agent say, we typically dress up as DEA agents and go to Halloween parties and ask for drinks as part of our duty. And so the second element that acts as such is what distinguishes a bragger from the criminal. And where you have both factors, where you have someone who is falsely assuming and pretending to be an officer of the United States and someone who is taking actions in conformity with that pretense, that is where you have criminal conduct. Without that second piece of it, which is what you are missing in the Halloween hypothetical or the adult entertainer hypothetical, you do not have the fake marshal in the theater case. When we were addressing the First Amendment challenge to Section 912, in that opinion, we said that we relied on the language from Lepowich that to save the constitutionality of the statute, it requires that the person sought to cause the person to follow some course he would not have pursued but for the deceitful conduct. The defendant here proposed exactly that language, which we relied upon to save the constitutionality of the statute, proposed exactly that language in jury instructions. Why should that instruction not have been given? The causation is relevant, but it's covered by the acts of such instruction. So it's not a separate element. It's not causation. It's what you are seeking to do, right? You seek to cause a person to follow some course. Right. And that is covered by the acts of such elements of the statute, Your Honor, where someone pretends, falsely pretends to be an officer or agent of the United States, and then takes action in conformity with that pretense. That action in conformity is what is the intent to cause someone to behave differently. But requiring the government to approve that they intended to have someone do something differently adds an element to the statute. It's not necessary. It's necessary to keep it constitutional, right? I don't understand why a more specific explication of that would not be quite helpful to the jury in trying to distinguish between the actual charges and the many hypotheticals that can be developed here. I also have to say, if you could also address, I was troubled by the prosecution's discussion in the district court of this as a strict liability statute.  It may be helpful for the jury to look at the intent to cause someone to act differently, but it's not necessary as a jury instruction, particularly whereas here the court instructed that Mr. Wade had to be asserting the authority of a DA agent. That encompasses, that assertion of authority encompasses the behavior of trying to get someone to do something based on your false assumption or pretense of authority. And in this case, there was ample evidence that Mr. Wade's false pretense and action in conformity did cause the victim to do something differently. Him walking up to her door with a badge and a gun caused her to open the door. That's what she testified to. She's a single woman living at home and without that badge and gun, she wouldn't have opened the door. It also caused her to answer questions that he asked about this false person. And it caused her to be concerned that there was criminal activity in her neighborhood because it was being investigated by someone she believed to be a DA agent. So the instructions are an accurate statement of the law. They're exactly the instructions that were given in the Bonin District Court that this court affirmed. In fact, they went a little further and instructed on assertion of authority. Nothing about those instructions violates the First Amendment or requires a different conclusion than Bonin. To answer your second question, the government's use of the phrase strict liability may have perhaps been a poor choice of words. But if this court looks at the record in the District Court of that argument, which is on appendix page 110, I believe, what the government was pointing out was that this motive, a nefarious motive. And when the government used the strict liability term, specifically referenced statutes such as 922G as being analogous, statutes that prohibit, for example, a felon being in possession of a firearm. The underlying reason that the felon is in possession of a firearm, for example, that the felon wants to protect themselves living in a bad neighborhood, that underlying motive or rationale is not relevant and is often precluded as a jury notification argument. And that is what the government was explaining and trying to articulate to the court in this argument. And that's how the court took it. And in fact, if you look at that exchange in the District Court, the defendant, Mr. Murray, agreed with the government's characterization that the underlying motive or rationale was irrelevant. When the government used the term strict liability, that's what the government was referring to, that there's a difference between mens rea and knowing falsely pretending and an underlying rationale for the false pretense. The former is relevant. A defendant cannot be held criminally liable for falsely pretending to be a DEA agent if they do not know that they are falsely pretending. That is, if they believe that they are, in fact, a DEA agent under some mistake of fact. On the other hand, a defendant can be held criminally liable for this statute, even if the underlying rationale for their pretense is innocent or non-nefarious. Like here, the argument was that he was just trying to impress the victim and get her to go out with him. But that underlying motive or rationale for the conduct isn't relevant. The statute penalizes the false pretense and an action in conformity therewith, regardless of the underlying rationale. And that really is the distinction, and that takes me back to the argument and the distinction that the government makes with what the defendant argued in the district court and the defendant is arguing here. The defendant has conflated motive and mens rea. And the defendant claims that the underlying motive, the romantic interest, is the mens rea and is somehow relevant to the elements of the statute. But it is not. The statute merely requires a knowingly false pretense of being an officer of the United States and then an action in conformity therewith. That action in conformity therewith separates the bragger from the criminal, the Halloween partygoer from the criminal. But the underlying motive, the rationale for the pretense, is not relevant to any reason other than jury nullification, weighing the sympathies of the jury to refuse to penalize someone from engaging in criminal conduct when they might just be having a romantic interest that they don't know how to otherwise express. And that jury nullification is improper. And the defendant and Mr. Murray acknowledged that the only relevance to the motive would be if an intent to defraud or assertion of authority was relevant. Now, the government disputes that the motive is relevant even to any of those elements, but Bonin held that intent to defraud and assertion of authority are not elements of the statute. And Bonin therefore controlled. This case is no different than the other cases that have held similar conduct to be sufficient. Robbins in the Eighth Circuit where the individual showed a gun, handcuffs, and an ID badge was sufficient to violate the statute. Parker in the Fourth Circuit where a buyer of wood told the seller that he worked for the IRS but then purchased the wood at asking price, that was held to be sufficient to violate the statute. And Hamilton in this circuit where an individual rented a room and said he was an FBI agent and regaled his host with stories. There was no fraud. That person got nothing out of it other than perhaps impressing his host with his career. If that's right, if that's a correct reading, those cases were wrongly decided. I disagree, Your Honor, because in those cases, the individual pretended to be an officer of the United States and then acted as such. For example, it influenced the behavior of others. For example, Hamilton's owner of the boarding house tolerated his conduct when she would not have tolerated it from anyone else, and the government proved as much. Correct, and the same is true here where the government proved that the victim opened the door and engaged with the person she believed to be a DEA agent in investigating this purported in a way that she wouldn't have if he was not a DEA agent. The victim in this case testified that the reason she opened the door was because she believed the man standing in front of it was a DEA agent, and the reason she continued to talk to him was because he was investigating a crime. The government proved the same. I want to make sure that we don't, however, let the circuit law drift into the area of criminalizing the braggart. Yes, Your Honor, absolutely, and the only distinction, the only point the government is making is that the jury instructions in those cases in Bonin and Hamilton and Parker and Robbins were the same as here, that the action in conformity therewith satisfies the what I've been calling the causation or the intent to cause issue that this court raised in Bonin on the constitutionality standpoint, but that second element is what addresses the distinction between criminalizing just speech in violation of the First Amendment and not. It's the second element that was properly instructed. In this case, the jury was instructed exactly as the jury was instructed in Bonin, and this court should follow Bonin. Furthermore, there was ample evidence to satisfy all of the elements and satisfy the jury verdict. There was sufficient evidence that Mr. Wade did falsely pretend to be a DEA agent. He never claimed and does not now claim that he did not know that he was not a DEA agent. There was never any such suggestion below nor on appeal, and he acted as a DEA agent. He conducted, pretended to conduct an investigation. He wore a badge and a gun. He showed a mug shot. He left a note seeking additional information about a purported criminal. All of those acts satisfied the second element and transitioned Mr. Wade from a braggart to a criminal. Thank you, Ms. Stewart. Thank you. All right. Thank you, Ms. Stewart. Let's see. Mr. Murray, you have three minutes. Thank you, Your Honor. I'd first like to address the hypothetical that Judge Baird recited and similar to the one I proposed in my brief. The man who dresses up as a DEA agent goes to a Halloween party and tells everyone they're under arrest. The statute contemplates actions, not context, and the government's response to that is that context matters. But the jury's not asked to find anything in relation to context. If that person had been charged under Section 912, under the government's instructions, he would have been found guilty regardless of the context. It's not the context that makes that innocent. It's the lack of fraudulent intent that makes that conduct innocent, because the actions by themselves satisfy the elements the government has proposed. The pretending— Mr. Murray, could I ask you—prosecutions and appeals under this statute offer a field day for hypotheticals about costume parties and theatrical productions and the like. Can you direct us to any actual prosecutions that you think were way out of bounds? I can't, no. And this is honestly the only violation under this statute I've ever handled as a criminal defense attorney. So no, I cannot at this time. The point is that the hypothetical demonstrates what separates the criminal from the braggart, and it's not context. It's the lack of fraudulent intent. What I would also invite the Court's attention to, which Your Honor already mentioned, is Bonin. The government here says that Bonin doesn't require fraudulent intent, but at the same time, Bonin again said fraudulent intent is what protects the statute from First Amendment challenge. You can't have it both ways. You can't, on the one hand, hide behind the fraudulent intent requirement to insulate the statute from First Amendment challenge, while at the same time argue that fraudulent intent need not be proven, the jury need not consider it, and it has no bearing whatsoever on whether one violated the statute. That's inconsistent. The only consistent conclusion we can draw from Bonin is that fraudulent intent remains an inherent component of the crime, which means the jury must find it beyond reasonable doubt. The government appears to have conceded that the language that Wade proposed, directly from the left of which decision, have been helpful. I agree, it would have been helpful. And it was error not to instruct the jury on that language. It would have, at the very least, put some meat on the requirements that the government had to prove. So, for those reasons, for the lack of any submission of any mens rea element, whatever, whether knowing, whether fraudulent intent, but combined, that was error, and the district court relied on that error to preclude Wade from arguing his motive. Now, Wade has never said that motive is a necessary element. Wade has never said that motive is intent. The government accuses Wade of conceding those terms. He's never done that. Our point is that motive is relevant to whether he had fraudulent intent or relevant to whether he was asserting any authority. Whether that's true or not is for the jury to decide, and the government could have perhaps countered all of those arguments quite readily, but that does not make those arguments jury nullification. The jury should have considered a mens rea element in this case, and its failure to be submitted with, the district court's failure to submit any of those elements was error, and it prejudiced Wade. It was not harmless because it crippled his right to present a defense. Finally, we do submit that the evidence has been sufficient on each count. Sorry, Your Honor. I'll just say it's time to wrap up. All right. Thank you to both counsel again for the extra effort we've asked for from you in this case. The case is taken under advisement. We'll move on to the next case of the day, Carlton Gunn versus Continental Casualty Company, which is appeal number 19-2898. Do we have Mr. DeStefano? Mr. DeStefano, yes, Your Honor. DeStefano, okay. And Mr. Austin? Yes, Your Honor. I'm here. All right. Can you hear me okay? Yes. Okay. Thank you all. All right. Mr. DeStefano, go ahead. Thank you, Your Honor. Good morning. John DeStefano for the